No. 19-11354-J

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**UNITED STATES OF AMERICA**,

Appellee,

vs.

**STANLEY WINTFIELD ROLLE**,

Appellant.

_____

**Appeal from the United States District Court
for the Southern District of Florida**

_____


_____


**BRIEF PURSUANT TO ANDERS V. CALIFORNIA**
_____



NEAL GARY ROSENSWEIG, P.A.
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720
Attorney for Appellant



**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

## UNITED STATES V. STANLEY WINTFIELD ROLLE
## No. 19-11354-J

In compliance with F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2(b), 26.1-2(f), and 26.1-3, the undersigned certifies that the following persons and entities have an interest in the outcome of this appeal:

Bryn, Brenda G., Assistant Federal Public Defender

Caruso, Michael, Federal Public Defender

De Los Santos, Rey, Co-Defendant

Dunham, Christian S., Assistant Federal Public Defender

Fajardo Orshan, Ariana, United States Attorney

Ferrer, Wifredo A., Former United States Attorney

Goodman, Jonathan, United States Magistrate Judge

Greenberg, Benjamin, Former United States Attorney

Grosnoff, Nicole, Assistant United States Attorney

Harris, Ayana, Assistant Federal Public Defender

Herman, Carol, Assistant United States Attorney

Hernandez, Yeney, Assistant United States Attorney

Huck, Paul C., United States District Judge

Jones, Phillip, Assistant United States Attorney

i

McAliley, Chris M., United States Magistrate Judge

McDonald, Ian, Assistant Federal Public Defender

Merlino, Jr., Richard A., Counsel for Co-Defendant Rey De Los Santos

Moreno-Archibold, Carlos A., Co-Defendant

Ravindran, Arun, Assistant Federal Public Defender

Rolle, Stanley W., Defendant/Appellant

Rosensweig, Neal Gary, Esq., Appellate Counsel for Defendant/Appellant
        Stanley Wintfield Rolle

Rubio, Herman F., Counsel for Co-Defendant Carlos Moreno- Archibold

Sattler, Brian, Assistant United States Attorney

Smachetti, Emily M., Assistant United States Attorney

United States of America, Plaintiff/Appellee

## STATEMENT REGARDING ORAL ARGUMENT

The undersigned respectfully submits that oral argument is not necessary to the just resolution of this appeal and will significantly enhance the decision-making process.


## CERTIFICATE OF TYPE AND SIZE

The size and style of type of this brief is Times New Roman, size 14.

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

CERTIFICATE OF INTERESTED PERSONS      i-ii
STATEMENT REGARDING ORAL ARGUMENT      iii
CERTIFICATE OF TYPE AND SIZE      iii
TABLE OF CONTENTS      iv
TABLE OF CITATIONS      v-x
STATEMENT OF SUBJECT MATTER AND APPELLATE
     JURISDICTION      1
STATEMENT OF THE ISSUES      2
STATEMENT OF THE CASE      3-13
     1.      Course of the Proceedings      3-6
     2.      Statement of the Facts      6-13
     3.      Standards of Review      14
SUMMARY OF THE ARGUMENT      15
ARGUMENT      16-48

**I.     The District Court appears not to have erred in denying ROLLE's motion to dismiss the indictment, where he was seized from a vessel outside the territorial limit of the United States and charged with alien smuggling offenses.**      16-27

**II.     The district court appears to have committed no error in denying ROLLE's motion in limine to exclude Rule 404(b) evidence of his  prior conviction for an alien ~~smuggling offense.~~**      27-32

**III.     The district court does not appear to have erred in denying ROLLE's Rule 29 Motion.**

**IV.     The district court does not appear to have committed error by refusing to instruct the jury that proof of an overt act was required to convict ROLLE of conspiracy.**      32-42

**V.     ROLLE's total sentence of 60 months appears to be reasonable under the circumstances.**      42-48

CONCLUSION      49
CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)      49
CERTIFICATE OF SERVICE      50

iv

## **TABLE OF CITATIONS**

**Cases**                                                                     **Page(s)**

Al Otro Lado v. Wolf, 952 F.3d 999 (9th Cir. 2020)            23

Anders v. California, 386 U.S. 737 (1967)                        2, 14, 15, 49

Bonner v. City of Pritchard, Ala., 661 F.2d 1206 (11th Cir. 1981)   20

EEOC v.  Arabian Am. Oil Co., 499 U.S. 244 (1991)          20

Gall v. U.S., 552 U.S. 38 (2007)                                     14, 44-45

Miranda v. Arizona, 384 U.S. 436 (1966)                        13, 17, 29

Nash v. U.S., 229 U.S. 373 (1913)                                  43

Singer v. U.S., 323 U.S. 338 (1945)                               41, 43-44

Smith v. U.S., 507 U.S. 197 (1993)                               20

Yenkichi Ito v. U.S., 64 F.2d 73 (9th Cir.),
      cert. denied, 289 U.S. 762 (1933)                            24, 25

U.S. v. Anaya, 509 F.Supp. 289 (S.D.Fla. 1980) (*en banc*),
      aff'd on other grounds, *sub nom.* U.S. v. Zayas-Morales,
      685 F.2d 1272 (11th Cir. 1982)                              22

U.S. v. Baker, 609 F.2d 134 (5th Cir. 1980)                    20, 23

U.S. v. Beechum, 582 F.2d 898 (5th Cir. 1978) (*en banc*),
      cert. denied, 440 U.S. 920 (1979)                            32

U.S. v. Bowman, 260 U.S. 94 (1922)                             20-21, 25

| **Cases** | **Page(s)** |
|---|---|
| U.S. v. Bowman, 302 F.3d 1228 (11th Cir.2002) (*per curiam*), cert. denied, 538 U.S. 1001 (2003) | 14, 33 |
| U.S. v. Cohen, 888 F.2d 770 (11th Cir.1989) | 29 |
| U.S. v. Delgado, 56 F.3d 1357 (11th Cir. 1995), cert. denied, 516 U.S. 1049 (1996) | 30, 31 |
| U.S. v. Delgado-Garcia, 374 F.3d 1337 (D.C. Cir. 2004), reh'g en banc denied, cert. denied, 544 U.S. 950 (2005) | 23-24, 27 |
| U.S. v. Ellisor, 522 F.3d 1255 (11th Cir.2008) | 14, 29 |
| U.S. v. Edouard, 485 F.3d 1324 (11th Cir. 2007) | 32 |
| U.S. v. Frank, 599 F.3d 1221 (11th Cir.), cert. denied, 562 U.S. 876 (2010) | 20 |
| U.S. v. Gayden, 977 F.3d 1146 (11th Cir. 2020) | 14, 16 |
| U. S. v. Gholston, 932 F.2d 904 (11th Cir. 1991) | 2, 14, 49 |
| U.S. v. Gottfried, 2012 WL 2887225  (S.D. Cal. Jul. 13, 2012) (unpublished) | 26 |
| U.S. v. Hanna, 639 F.2d 192 (5th Cir. Unit B 1980) | 38 |
| U.S. v. He, 245 F.3d 954 (7th Cir.), cert. denied, 534 U.S. 966 (2001) | 38 |
| U.S. v. Hunt, 526 F.3d 739 (11th Cir. 2008) | 48 |
| U.S. v. Jernigan, 341 F.3d 1273 (11th Cir. 2003) | 29-30 |

**Cases**                                                                  **Page(s)**

U.S. v. Johnson, 485 F.3d 1264 (11th Cir. 2007)                            48

U.S. v. Lampley, 68 F.3d 1296 (11th Cir.1995)                             32

U.S. v. Lanier, 920 F.2d 887 (11th Cir.), cert. denied,
    *sub nom.* Stevens v. U.S., 502 U.S. 872 (1991)    43-44

U.S. v. Lopez, 484 F.3d 1186 (9th Cir. 2007)                             26

U.S. v. Lopez, 590 F.3d 1238 (11th Cir. 2009), cert. denied,
    562 U.S. 981 (2010)                                35, 37-39

U.S. v. Matthews, 431 F.3d 1296 (11th Cir. 2005) (per curiam),
    cert. denied, 549 U.S. 811 (2006)                  30, 32

U.S. v. Ortega-Torres, 174 F.3d 1199 (11th Cir.),
    cert. denied, 528 U.S. 911 (1999)                  46

U.S. v. Parrado, 911 F.2d 1567 (11th Cir. 1990),
    cert. denied, 498 U.S. 1104 (1991)                 41

U.S. v. Perez, 443 F.3d 772 (11th Cir. 2006)                             30, 35

U.S. v. Pielago, 135 F.3d 703 (11th Cir. 1998)                           16

U.S. v. Ramirez, 426 F.3d 1344 (11th Cir. 2005)                          30, 31

U.S. v. Rodriguez, 732 F.3d 1299 (11th Cir.2013)                         33

U.S. v. Rolle, 491 Fed.Appx. 63 (11th Cir. 2012) (unpublished)          17-18

U.S. v. Santos, 553 U.S. 507 (2008)                                      37-38

U.S. v. Sassi, 966 F.2d 283 (7th Cir.), cert. denied,
    506 U.S. 991 (1992)                                43

| **Cases** | **Page(s)** |
|---|---|
| U.S. v. Shabani, 513 U.S. 10 (1994) | 43 |
| U.S. v. Shaw, 560 F.3d 1230 (11th Cir. 2009), cert. denied, 557 U.S. 927 (2009) | 45 |
| U.S. v. Smiley et al., 6 Sawy. 640, Case No. 16,317 (Circuit Court, N.D.Cal. 1864) | 24 |
| U.S. v. Stephens, 365 F.3d 967 (11th Cir.2004) | 29 |
| U.S. v. Talley, 431 F.3d 784 (11th Cir. 2005) (*per curiam*) | 48 |
| U.S. v. Villanueva, 408 F.3d 193 (5th Cir.), cert denied, 546 U.S. 910 (2005) | 19-27, 41 |
| U.S. v. Williams, 526 F.3d 1312 (11th Cir. 2008) | 14, 42 |
| U.S. v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982) | 22 |

| **Statutory and Other Authority** | **Page(s)** |
|---|---|
| 8 U.S.C. § 144 | 24 |
| 8 U.S.C. § 1324(a) | *passim* |
| 8 U.S.C. § 1324(a)(1)(A)(iv) | 3, 16-17, 24, 38, 45 |
| 8 U.S.C. § 1324(a)(1)(A)(v)(I) | 3, 16-17, 24, 42, 45 |
| 8 U.S.C. § 1324(a)(1)(B)(I) | 16-17, 24 |

| **Statutory and Other Authority** | **Page(s)** |
|---|---|
| 8 U.S.C. § 1324(a)(2) | 22, 24, 26, 44 |
| 8 U.S.C. § 1324(a)(2)(B)(ii) | 3, 16-17, 18, 19, 24, 26, 45, 46 |
| 8 U.S.C. § 1324(a)(2)(B)(iii) | 16-17, 46 |
| 8 U.S.C. § 1326 | 3 |
| 8 U.S.C. § 1327 | 3 |
| 15 U.S.C. § 1, The Sherman Antitrust Act | 43 |
| 18 U.S.C. § 371 | 19, 43, 44 |
| 18 U.S.C. § 982(a)(6) | 3 |
| 18 U.S.C. § 3231 | 1 |
| 18 U.S.C. § 3742 | 1 |
| 18 U.S.C. § 3553(a) | 44, 47, 48 |
| 21 U.S.C. § 846 | 41 |
| 28 U.S.C. § 1291 | 1 |
| 28 U.S.C. § 2255 | 6 |
| Rule 404(b), Fed.R.Evid. | 2, 4-5, 14, 27-30 |
| Rule 403, Fed.R.Evid. | 27 |

**<u>Statutory and Other Authority</u>**                                      **Page(s)**

Rule 29, Fed.R.Crim.P.                                                14, 32-42

Rule 26.1, F.R.A.P.                                                   i

Rule 26.1-2(b), F.R.A.P.                                              i

Rule 26.1-2(f), F.R.A.P.                                              I

Rule 26.1-3, F.R.A.P.                                                 i

Rule 32(a)(7)(B), F.R.A.P.                                            47

11th Cir. R. 26.1-1, F.R.A.P.                                      i

USSG § 2L1.1                                                         45

USSG § 3B1.3                                                         45

USSG § 3D1.1                                                         45

USSG § 3D1.4                                                         43

USSG Chapter 5, Part A, Sentencing Table                            46

USSG § 5G1.2(b)                                                      46

H.R. Rep. No. 682(1), 99th Cong., 2d Sess.,  65-55 (1986),
        *reprinted in* 1986 U.S.C.C.A.N. 5649, 5669-70               22

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction of this case pursuant to 18 U.S.C. § 3231 because the defendant was charged with an offense against the laws of the United States. The statutory basis of appeal under which this Court has jurisdiction is 28 U.S.C. § 1291 and 18 U.S.C. § 3742, which give the courts of appeals jurisdiction over all final decisions and sentences of the district courts of the United States. The Notice of Appeal was timely filed on April 8, 2019 (DE: 83), from a judgment entered on March 27, 2019 (DE: 78).

## STATEMENT OF THE ISSUES

A.      Under the analysis employed in <u>Anders v. California</u>, 386 U.S. 737 (1967), when counsel for the appellant suggests that a case contains no basis for appeal, the appellate court must make an independent review of the record.  <u>United States v. Gholston</u>, 932 F.2d 904 (11th Cir. 1991).

B.      Whether the District Court erred in denying ROLLE's motion to dismiss the indictment, where he was seized from a vessel outside the territorial limit of the United States and charged with alien smuggling offenses.

C.      Whether the district court erred in denying ROLLE's motion in limine to exclude Rule 404(b) evidence of his  prior conviction for an alien smuggling offense.

D.      Whether sufficient evidence was presented at trial to send the case to the jury and to support appellants' convictions.

E.      Whether the district court erred by refusing to instruct the jury that proof of an overt act was required in order to convict ROLLE of conspiracy to commit an alien smuggling offense.

F.      Whether ROLLE's total sentence of 60 months is reasonable under the circumstances.

2

## STATEMENT OF THE CASE

Appellant Stanley Wintfield Rolle was the defendant in the district court and will be referred to as "ROLLE," "Appellant" or "Defendant."  The appellee, The United States of America, will be referred to as "government."  The record will be cited to by reference to the docket entry and page number(s) of the Record on Appeal (i.e., DE: 1-1).  The Presentence Investigation Report will be referred to as "PSR."

## 1. Course of the Proceedings and Disposition Below

On November 9, 2018, an Indictment was filed in the U.S. District Court for the Southern District of Florida, charging ROLLE with one count of Conspiracy to Encourage and Induce Aliens to Enter the United States, in violation of 8 U.S.C. § 1324 (a)(1)(A)(v)(I) (Count 1); 16 counts of Encouraging and Inducing Aliens to Enter the United States, in violation of 8 U.S.C. § 1324 (a)(1)(A)(iv) (Counts 2-17); 16 counts of Bringing Aliens to the United States for Commercial and Private Financial Gain, in violation of 8 U.S.C. § 1324 (a)(2)(B)(ii) (Counts 18-33); and one count of Conspiracy to Allow, Procure, and Permit Certain Aliens to Enter the United States, in violation of 8 U.S.C. § 1327 (Count 34) (Indictment, DE: 1).  Co-defendant Rey de los Santos (DE LOS SANTOS) was charged with one count of Illegal Entry of a Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b)(2) (id.).  Co-defendant

3

Carlos Arturo Moreno-Archibold (ARCHIBOLD) was charged with one count of Illegal Entry of a Removed Alien, in violation of 8 U.S.C. § 1326(a) and (b)(2) (id.). Forfeiture allegations were asserted against ROLLE, pursuant to 18 U.S.C. § 982(a)(6) (id.).

ROLLE made his initial appearance on November 16, 2018, at which time he was formally arrested and ordered held in temporary pre-trial detention; an Assistant Federal Public Defender was appointed to represent him (Minute Entry, Initial Appearance, DE: 5). On November 19, 2018, he invoked his Right to Silence and Counsel (Invocation of Right to Silence and Counsel, DE: 4). On November 21, 2018, he entered a not guilty plea at arraignment and demanded a jury trial; bond was set upon stipulation at $ 250,000.00 cash/Nebbia (Minute Entry, Arraignment/Bond Hearing, DE: 8). On November 27, 2018, the district court entered an order setting trial for December 26, 2018 (Order Setting Trial, DE: 11). On December 10, 2018, the government filed a Superseding Indictment, which appears to contain identical charges against all defendants as the original (Superseding Indictment, DE: 14)

On December 19, 2018, the trial was continued by court order, until January 7, 2019 (Order to Continue, DE: 16), On December 31, 2018, he government filed its Notice of Intent to Introduce Evidence Under Fed. R. Evid. 404(b) concerning ROLLE's 2011 conviction for alien smuggling (United States' Notice of Intent to

Introduce Evidence Under Fed. R. Evid. 404(b); DE: 21).

ROLLE filed a Motion to Dismiss Indictment on January 3, 2019, challenging the government's jurisdiction to board and seize the vessel he was operating (Defendant's Motion to Dismiss Indictment, DE: 24). The district court denied the motion the same day (Order Denying Motion to Dismiss, DE: 25). On January 4, 2019, the district court continued the trial again, this time until January 15, 2019 (Order to Continue, DE: 29). On January 8, 2019, the government filed its Notice of Intent to Use Immigration Documents Evidence (Notice of Intent to Use Immigration Documents Evidence, DE: 41).

Trial began on January 15, 2019, and lasted two days, ending on January 16, 2019 (Paperless Minute Entry, DE: 47; Paperless Minute Entry, DE: 48). The jury, after sending two notes to the judge (Jury Note #1, DE: 52; Jury Note #2, DE: 53), found ROLLE guilty on all counts except for Count 34 (Jury Verdict, DE: 54). A draft Presentence Investigation Report (PSR) was prepared, and it was disclosed on February 20, 2019 (PSR, DE: 68). A Final PSR was disclosed on March 19, 2019 (PSR, DE: 71). Sentencing took place on March 26, 2019 Paperless Minute Entry, DE: 77). ROLLE was sentenced to 60 months imprisonment, to run concurrently as to Counts 1-33; three years supervised release, also to run concurrently as to Counts 1-33, plus a total assessment of 4 3,300.00 (Judgment, DE: 78).

ROLLE timely filed a Notice of Appeal, which was entered on April 8, 2019 (Notice of Appeal, DE: 83).  On August 2, 2019, ROLLE filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 (Motion to Vacate, DE: 116).  The district court dismissed the motion by Order entered on August 6, 2019 (Order Dismissing Motion to Vacate, DE: 117).  On October 1, 2019, ROLLE moved for Change of Counsel (Motion for Change of Counsel, DE: 118); the motion was denied on October 2, 2019 (Order Denying Motion to Change Counsel, DE: 119). He remains incarcerated pending appeal.

## 2. Statement of the Facts

At trial, U.S. Custom Border Protection (CBP) Air and Marine Operations enforcement agent Manuel Rivera testified that on October 24, 2018 while on patrol in an aircraft  patrolling U.S. waters off Miami, he detected a vessel on his radar screen, which was heading west at 12-14 knots, at latitude 25.53N, 79.47W (DE: 104-141-45).  The vessel was approximately seven nautical miles from the 12-mile U.S. territorial limit (id. at 147-48).  Rivera was unable to see the vessel on the plane's camera at the time because of camera trouble (id.).  A few minutes later, the radar also stopped working (id. at 148).  By the time the radar and camera were working again, the boat had turned and was heading east towards the Bahamas (id.).

6

Rivera sent information about the boat to government vessels also patrolling the area, including the fact that through his camera, he could see roughly ten people on deck; some were wearing jeans, which was unusual to him (id. at 149-49). He also relayed that the boat was riding low in the water, indicative of a heavy load (id. at 149). Three U.S. Customs boats eventually caught up with the vessel approximately 20 miles off Bimini, which would be approximately 20-30 miles outside U.S. waters (id. at 170-171). Rivera testified that the vessel's operator appeared to throw something into the water (id. at 156). Agents identified ROLLE as the person operating the vessel (id. at 174).

Everyone was searched, and ROLLE had several thousand dollars in his possession (id. at 175-76). ROLLE told the agents he had spoken to a man on Abaco Island named "Jacob," who told ROLLE he had a job for him in Bimini (id.). ROLLE was to meet someone named "Steve" or "Steven" at a place called "Blue Water" (id. at 178-79). When he arrived in Bimini, Steve or Steven was there with the same vessel the agents had stopped, along with the aliens who were on board (id. at 179). ROLLE also told agents that Steve gave ROLLE instructions to take the individuals and the money towards the U.S., rendezvous with another, similar vessel, and transfer the individuals and money at certain coordinates (id.). Steve also gave ROLLE a GPS device (id.).

7

Fernando Esterlich, another member of the Homeland Security force, testified that the people from the vessel were brought to the Dania Border Patrol Station in Dania Beach (id. at 201-02). The individuals were processed by border patrol agents to determine if they were ineligible to enter the U.S. (id. at 202-04). Of the sixteen individuals processed, none were U.S. citizens, and none had been given prior permission to enter the U.S. or a visa waiver (id. at 204-212). One of ROLLE's co-defendants, de los Santos, had a prior third degree felony conviction for a controlled substance in New York, and Moreno had a second degree aggravated felony conviction for dealing in stolen property, and was inadmissible, barred from entry into the U.S. for life (id. at 212-16). $ 23,400.00 in currency was seized, but the agent was not asked who it was seized from (id. at 216-17).

On Day Two of the trial, the government called Special Agent Steven Quattrocchi of U.S. Department of Homeland Security (Transcript of Trial, Day Two, DE-105-14). He and another agent processed the vessel, searching for evidence and photographing it (id. at 16). S.A, Quattrocchi described what was found, including 7 or 8 life jackets, $ 23,000.00 in U.S. currency, approximately $ 2,000.00 in Bahamian currency (id. at 17-22).

S.A. Quattrocchi spoke with ROLLE, who signed a statement of rights form on October 25, 2018; the interview was recorded with Quattrocchi's assistance (id.

at 23-24). A recording of the conversation was played for the jury, who followed along with a transcript (id. at 24-26). The jury was instructed that it was for them to decide whether the transcript accurately reflected what was said in the recording (id. at 26-27).

According to the transcript of the interview provided to the jury, ROLLE was approached by Jacob Curry in Abaco, who asked if ROLLE wanted to "make some change." ROLLE agreed, but didn't want to take any risk, because he knew the penalty for illegal re-entry (DE: 62-1-26, Govt. Exhibit 4-B, Excerpt of Transcript of Interview). Curry referred ROLLE to "Chuckie," to take the people by boat from Bimini to someone named "Steve" somewhere just outside the U.S. border (id. at 28-33). ROLLE threw a GPS device and his phone overboard just before he saw a plane and boats; ROLLE gave the agents the Bahamian phone number he was supposed to call (id. at 33-36). ROLLE stated he was given money to turn over to "Steve" with the people, but he did not count it (id. at 39-41). ROLLE assumed the people on the boat were going to the U.S., but didn't know for certain (id. at 42). ROLLE admitted that he had previously been arrested for smuggling, and that he knew what was going on; it was common sense (id. at 43-44). ROLLE admitted that he picked the people up in Bimini and took them by boat into international waters; he was beyond the U.S. 12-mile limit when he saw U.S. boats in the distance and a plane overhead (id. at 46-

9

49). ROLLE kept going, waiting for the boat he was supposed to meet to show up, and after doing circles for a minute, turned around and headed back towards Bimini, throwing his phone overboard when he saw boats coming after him (id. at 50-51).

ROLLE agreed with Agent Quattrocchi's summary of what had happened: Jacob Curry recruited ROLLE to take what was supposed to be six or seven people to "Steve," somewhere just outside U.S. waters; ROLLE would give Steve the money Chuckie had given him for the people to get on Steve's boat; Steve would then pay ROLLE a portion of the money, "maybe 2- 3,000," and that he believed that Steve would take the people to the U.S., because doing that was where the big money and big risk was, in crossing the U.S. border (id. at 59-66).

ROLLE stated that he did not know if the passengers he was transporting were illegal; he assumed some of them were (id. at 66). He did not check their passports or visas, nor did he contact Bahamian authorities when he left Bimini or U.S. officials when he was approaching the U.S., because he had been deported in 2015 after being arrested for alien smuggling in 2010, and he had ended his supervised release on that charge in February of 2018 (id. at 66-69). The recording concluded with ROLLE gving the agents his understanding of the law of alien smuggling (id. at 69-71).

The agent stated that the vessel had Florida registration, but the agent could not remember who it was registered to; he believed the registration had expired, but

didn't follow up on who the last owner was (id. at 40-41). The agent agreed that ROLLE told him that he never entered U.S. waters, and that ROLLE didn't enter U.S. waters because he believed there were boats parked at the border of U.S. waters (id. at 41). ROLLE admitted to throwing his phone and a GPS devide overboard (id.at 42).

Co-defendant Rey de los Santos testified that he had been living in the U.S. from 1998 to 2013, when he was deported as a result of his prior conviction for intent to sell drugs (id. at 48-49). De los Santos, a Dominican, arranged with people to be taken to the Bahamas, and then arranged to be taken to the U.S. on a boat (id. at 49-51). He paid someone named "Cocky" (ph.) to be taken to the U.S., he flew to Bimini from somewhere else in the Bahamas, then left Bimini for the U.S. in a boat captained by ROLLE, who he identified in court (id. at 51-54). At some point after leaving Bimini, ROLLE said the police were coming, and he turned back (id. at 54). De los Santos admitted he was charged with a crime, that he had agreed to cooperate with the government and prosecution, and that he was told that cooperating would be helpful to his case (id. at 55-56). He admitted that he had previously been deported, and that he believed the boat he was on was going to bring him to the U.S., without meeting another boat on the way (id. at 56). De los Santos was not able to remember what benefit he might receive for his testimony, he testified only that he was not

11

promised a specific benefit, and that he knew it would reflect well for his case if he did testify (id. at 58-59, 62-63).

ROLLE's other co-defendant, Carlos Arturo Moreno Archibald ("Moreno") testified that he came to the U.S. in 1987, and that he had been convicted in 1991 for weapons possession, possession of stolen property in 1999, and was deported back to his native Panama (id. at 71-72). He attempted to re-enter the U.S. through El Paso in 2014 and was arrested by border patrol, convicted and deported again (at. at 72-73, 89).

In 2018, Moreno met someone named Brad Johnson in Nassau, and Moreno paid Johnson $ 10,000.00 to get from the Bahamas to the U.S. by boat (id., at 73). Upon getting to Bimini with Johnson, Moreno was taken by car to a boat, where he boarded with 16 others, including six Chinese and five Dominicans; the boat was crowded (id., at 74-76). He admitted agreeing to cooperate with the government, and he admitted that he knew it might help him at sentencing, but he had not been promised anything specific (id., at 83). ROLLE had not asked Moreno whether he had papers or authorization to enter the U.S. (id. at 84). He did not have such papers or authorization (id.).

The government published evidence of ROLLE's 2010 conviction to the jury, and the jury was instructed on how that evidence could be considered (id. at 95-96).

12

The government then read from a public record of the conviction and stipulated statement of facts from that case; ROLLE, two Jamaicans (later identified as Ray Simpson and Daimaine Samuels) and five Haitians were on a boat detected appx. 43 nautical miles off Palm Beach County and boarded by law enforcement appx. 22 nautical miles from the coast (id., at 96-97). All subjects freely admitted they were trying to enter the U.S. (id., at 97).

ROLLE was Mirandized, and he offered that he was paid only about $ 300-$ 500 to bring the others to the U.S., an amount far below the going rate and not worth the jail time he was facing (id., at 98). $ 1,700.00 was found on ROLLE (id.).

Simpson was Mirandized, and an interview was conducted; Simpson said he paid $ 4,000.00 to someone named "Pedro" to be smuggled to Palm Beach, Florida. Id. Pedro took Simpson to a marina in Freeport, where he boarded a boat operated by ROLLE (id., at 98-99). The government rested (id. at 99), and ROLLE did not testify or put on a defense. The jury found ROLLE guilty on all but one of the 34 counts (Count 34). He remains incarcerating pending appeal

## 3. Standards of Review

A.    "We review the district court's denial of [a] motion to dismiss the indictment for an abuse of discretion." U.S. v. Gayden, 977 F.3d 1146 (11th Cir. 2020).

B.    This Court reviews the admission of Rule 404(b) evidence for abuse of discretion.  U.S. v. Ellisor, 522 F.3d 1255, 1267 (11th Cir.2008).

C.    This Court reviews the denial of a motion for judgment of acquittal de novo. U.S. v. Bowman, 302 F.3d 1228, 1237 (11th Cir.2002) (*per curiam*), cert. denied, 538 U.S. 1001 (2003).

D.    Challenges to a district court's jury instructions are reviewed *de novo*.  U.S. v. Williams, 526 F.3d 1312, 1320-1321 (11th Cir. 2008).

E.    This Court reviews the reasonableness of a sentence imposed by the district court under a deferential abuse of discretion standard.  Gall v. U.S., 552 U.S. 38, 41 (2007).

F.    Under the analysis employed in Anders v. California, 386 U.S. 738 (1967), when counsel for the appellant suggests that a case contains no basis for appeal, the appellate court must make an independent review of the record.  U. S. v. Gholston, 932 F.2d 904 (11th Cir. 1991).

14

## SUMMARY OF THE ARGUMENT

Appellant, STANLEY WINTFIELD ROLLE, was convicted by a jury of 1 count of Conspiracy to Encourage and Induce Aliens to Enter the United States, 16 counts of Encouraging and Inducing Aliens to Enter the United States, and 16 counts of Bringing Aliens to the United States for Commercial and Private Financial Gain. Pursuant to <u>Anders v. California</u>, 286 U.S. 738 (1967), the undersigned, after making a conscientious review of the record, concludes that there are no meritorious appellate issues concerning ROLLE's conviction and sentence. While undersigned counsel believes that in his professional judgment no non-frivolous issues exist for appeal, the issues are nevertheless presented and advanced so as to protect the client's rights, and to preserve the issues for possible further review.  None of those potential issues appear to have any merit, and his total sentence of 60 months imprisonment is not unreasonable under the circumstances.

15

## **ARGUMENT**

I.  **The District Court appears not to have erred in denying ROLLE's motion to dismiss the indictment, where he was seized from a vessel outside the territorial limit of the United States and charged with alien smuggling offenses.**

"We review the district court's denial of [a] motion to dismiss the indictment

for an abuse of discretion." U.S. v. Gayden, 977 F.3d 1146, 1150 (11ᵗʰ Cir. 2020)

(citing U.S. v. Pielago, 135 F.3d 703, 707 (11th Cir. 1998)).

8 U.S.C. § 1324 (2017) provides, in pertinent part:

8 U.S.C. § 1324
Section 1324 - Bringing in and harboring certain aliens
(a) Criminal penalties
(1)
(A) Any person who-
                        * * *
(iv) encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or
(v)
(I) engages in any conspiracy to commit any of the preceding acts, or
(II) aids or abets the commission of any of the preceding acts,
shall be punished as provided in subparagraph (B).
(B) A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs-
(i) in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under title 18, imprisoned not more than 10 years, or both;
(ii) in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under title 18, imprisoned not more than 5 years, or both;
                        * * *

16

(2) Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs-

(A) be fined in accordance with title 18 or imprisoned not more than one year, or both; or

(B) in the case of-

(i) an offense committed with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any State punishable by imprisonment for more than 1 year,

(ii) an offense done for the purpose of commercial advantage or private financial gain . . . .

* * *

be fined under title 18 and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

ROLLE was interviewed by law enforcement after being Mirandized and signing a rights waiver (Transcript of Trial, Day Two, DE-105-24-26). During the interview, ROLLE expressed his opinion to law enforcement that he could not legally be prosecuted for attempted alien smuggling unless he was inside the 12-mile U.S. territorial limit, and that the actual crime of smuggling aliens was not completed until he reached dry land (id. at 69-71). ROLLE believed this notwithstanding the fact that in 2012, he was convicted and eventually deported after he was seized in international waters, approximately 43 nautical miles east of Delray Beach, for a similar offense.

17

See U.S. v. Rolle, 491 Fed.Appx. 63 (11th Cir. 2012) (unpublished).[1]

ROLLE filed a motion to dismiss the indictment before trial (Defendant's Motion to Dismiss Indictment, DE: 24). In the motion, ROLLE acknowledged precedent from other circuits holding that 8 U.S.C. § 1324 applies to extraterritorial conduct, but argued that those cases were incorrectly decided, and presented the issue to preserve it for appellate review (id. at 3). The district court denied the motion the same day it was filed, without requiring the government to respond (Order, DE: 25).

The jury asked the following question of the district court during its deliberations at the conclusion of trial: "Does it matter legally whether the defendant was found, it says, on international waters or U.S. waters?" (Transcript of Trial, Day Two, DE-105-170). After discussing the matter with counsel, the jury was brought into the courtroom, and the juror who posed the question confirmed that the question was asked for jurisdictional purposes (id. at 175). The district court then answered the question:

> **THE COURT:** Seems pretty clear. My understanding was correct. Anybody want to ask another question? All right. Then I'm going to

---

[1] ROLLE was convicted of violating 8 U.S.C. § 1324(a)(2)(B)(ii), bringing or attempting to bring to the U.S. any alien, knowing or in reckless disregard of the fact that said alien(s) had not received prior official authorization to come to, enter and reside in the U.S. . . . for the purpose of commercial advantage or private financial gain. Case No. 9:10-cr-80134-WJZ; (Superseding Indictment, DE: 32-1-2).

give you my answer, anticipating this is what you meant by that. The answer is, No. As a matter of law, under the applicable United States statutes, it makes no difference whether the defendant was found in either the international waters or U.S. waters. You should refer to the jury instructions to see what the elements of each charged count are and what the government has to prove beyond a reasonable doubt to find the defendant either guilty -- or to find him guilty. Does that answer your question?

**JUROR:** Yes.

**THE COURT:** I thought that's what it was, but we wanted to be sure.

**JUROR:** Thank you.

Id. at 175-76.

The issue is whether 8 U.S.C. § 1324(a) applies to extraterritorial conduct, as there was no evidence that the acts forming the conspiracy or constituting any of the substantive offenses of conviction took place within the 12-mile territorial limit of the U.S. There appears to be little, if any, disagreement that it does. In U.S. v. Villanueva, 408 F.3d 193 (5ᵗʰ Cir.), cert denied, 546 U.S. 910 (2005), the Fifth Circuit was called upon to answer whether 8 U.S.C. § 1324(a)(2)(B)(ii) could support a conviction for conduct occurring outside the U.S. Id. at 195-96. While the defendants in Villanueva were convicted of a conspiracy under 18 U.S.C. § 371, the Fifth Circuit looked to "the underlying substantive crime of attempting to bring aliens to the United States for the purpose of commercial advantage or private financial gain

19

that is relevant in determining subject matter jurisdiction." Id. at 197 (citing U.S. v. Baker, 609 F.2d 134, 139 (5th Cir. 1980)[2]; see also U.S. v. Frank, 599 F.3d 1221, 1230 (11th Cir.), cert. denied, 562 U.S. 876 (2010) (following Baker and its reasoning).

The Fifth Circuit began by noting that "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." Id. at 197 (quoting Smith v. U.S., 507 U.S. 197, 204 (1993) (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991). However, a contrary intent of Congress "can be inferred when limiting the locus of a statute to U.S. territory would greatly curtail the scope and usefulness of the statute and leave open a large immunity for frauds that are as easily committed by citizens extraterritorially as at home." Id. at 197-98 (quoting U.S. v. Bowman, 260 U.S. 94, 98 (1922)). The Bowman Court stated:

> We have in this case a question of statutory construction. The necessary locus, when not specially defined, depends upon the purpose of Congress as evinced by the description and nature of the crime and upon the territorial limitations upon the power and jurisdiction of a government to punish crime under the law of nations. Crimes against private individuals or their property, like assaults, murder, burglary, larceny, robbery, arson, embezzlement and frauds of all kinds, which

---

[2]Decisions of the Fifth Circuit rendered prior to October 1, 1981 "shall be binding as precedent in the Eleventh Circuit." Bonner v. City of Pritchard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981)

affect the peace and good order of the community, must of course be committed within the territorial jurisdiction of the government where it may properly exercise it. If punishment of them is to be extended to include those committed outside of the strict territorial jurisdiction, it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard. We have an example of this in the attempted application of the prohibitions of the Anti-Trust Law to acts done by citizens of the United States against other such citizens in a foreign country. American Banana Co. v. United Fruit Co., 213 U.S. 347. That was a civil case, but as the statute is criminal as well as civil, it presents an analogy.

But the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers or agents. Some such offenses can only be committed within the territorial jurisdiction of the Government because of the local acts required to constitute them. Others are such that to limit their locus to the strictly territorial jurisdiction would be greatly to curtail the scope and usefulness of the statute and leave open a large immunity for frauds as easily committed by citizens on the high seas and in foreign countries as at home. In such cases, Congress has not thought it necessary to make specific provision in the law that the locus shall include the high seas and foreign countries, but allows it to be inferred from the nature of the offense

Id. at 97-98.

The Fifth Circuit inferred the requisite intent of Congress after examining the language of the statute, the legislative history, and the nature of the law. Id. at 198-200. The Court first stated that the language of the statute itself indicated that Congress intended it be applied extraterritorially. Id. at 198. The statute uses the

21

phrase, "brings to . . . the United States, rather than brings into . . . the United States." In 1986, Congress enacted the Immigration Reform and Control Act, completely overhauling the statute, including the change in the first sentence, in response to the decision in U.S. v. Anaya, 509 F.Supp. 289 (S.D.Fla. 1980) (*en banc*), aff'd on other grounds, *sub nom*. U.S. v. Zayas-Morales, 685 F.2d 1272 (11th Cir. 1982). Id. (citing H.R. Rep. No. 682(1), 99th Cong., 2d Sess. 65-55 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5669-70). Prior to 1986, the first sentence of § 1324(a) read: **"brings into or lands in the United States**." In Anaya, the district court held that the phrase, "brings into," was synonymous with "entering," so that one transporting illegal aliens could not be guilty of violating the statute if the aliens were not allowed entry into the U.S. Villanueva, 408 F.3d at 198 (citing Anaya, 509 F.Supp. at 297).

The Fifth Circuit found that the language of the statute, the legislative history, and the nature of the law indicate the intent of Congress that § 1324 should apply extraterritorially. Id. at 198. First the change in language from "brings into" to "brings to" the U.S. strongly suggested that Congress wished to deter potential alien transporters from inundating the U.S. with undocumented aliens, and that it was concerned about smuggling activity taking place outside the U.S. Id. (citing the legislative history).

Second, the Villanueva Court found that the statute criminalizes attempts,

many of which, if not most, will take place extraterritorially. Id. at 198-99. While an attempt to enter could include failed attempts occurring after an immigrant had entered U.S. territory, a failed attempt to "bring to" the U.S. will ordinarily be stopped outside of U.S. territory. Id. at 198-99.

Third, the context of immigration statutes made it natural to expect that Congress intended such statutes to reach extraterritorial conduct. Id. at 199 (citing Baker, 609 F.2d at 136. "Immigration statutes, by their very nature, pertain to activity at or near international borders. It is natural to expect that Congress intend[ed] for laws that regulate conduct that occurs near international borders to apply to some activity that takes place on the foreign side of those borders." Id. See Al Otro Lado v. Wolf, 952 F.3d 999, 1013 (9th Cir. 2020) (quoting Villanueva, 408 F.3d at 199).

Finally, the Villanueva Court found that drug smuggling laws were similar to § 1324, and that the necessary evidence of congressional intent to overcome the presumption against extraterritoriality was present in those laws. Id. at 199-200 (internal citations omitted). The Fifth Circuit noted that its holding as to the extraterritorial application of § 1324 comported with that of the D.C. Circuit. Id. n.6. See U.S. v. Delgado-Garcia, 374 F.3d 1337 (D.C. Cir. 2004) reh'g en banc denied, cert. denied, 544 U.S. 950 (2005) (holding that extraterritoriality applied to 8 U.S.C. § 1324(a)). The Ninth Circuit reached a different result, nearly ninety years ago.

In <u>Yenkichi Ito v. U.S.</u>, 64 F.2d 73 (9th Cir.), <u>cert. denied</u>, 289 U.S. 762 (1933), the Ninth Circuit held that an earlier version of the alien smuggling statute, Section 8 of the Immigration Act of 1917 (8 USCA § 144), was not violated when none of the alleged illegal activity occurred inside U.S. territory.  Id. at 75-76.  The Ninth Circuit stated

> that the intent of Congress to extend the federal criminal jurisdiction to offenses committed on the high seas must clearly appear from the language of the statute.  There is nothing in section 8 of the Immigration Act of 1917, supra, to indicate that Congress intended it to be effective outside of the recognized territorial limits of the United States.  Therefore, section 8 must be construed to have no effect on the high seas outside the three-mile limit

Id. at 75 (citing <u>U.S. v. Smiley et al.</u>, 6 Sawy. 640, Case No. 16,317 (Circuit Court, N.D.Cal. 1864) (Field, Circuit J.)

In <u>Delgado-Garcia</u>, Defendants were charged with Conspiracy to Encourage and Induce Aliens illegally to Enter the United States, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v), (a)(1)(A)(iv), and (a)(1)(B)(I), and Attempted Bringing of unauthorized Aliens to the United States, in violation of 8 U.S.C. §§ 1324(a)(2) and (a)(2)(B)(ii).  374 F.3d at 1340.  ROLLE was charged and convicted of Conspiracy to Encourage and Induce Aliens to Enter the United States, 8 U.S.C. § 1324(a)(I)(A)(v)(I) (Count 1); Encouraging and Inducing Aliens to Enter the United States, 8 U.S.C. § 1324(a)(I)(A)(iv) (Counts 2-17), and Attempted Bringing of

Unauthorized Aliens to the United States for Commercial and Private Gain, 8 U.S.C.

§ 1324(a)(2)(B)(ii) (Counts 17-33); virtually the same charges brought against the

Delgado-Garcia defendants.

The Delgado-Garcia Court found that § 1324(a) applies extratesstorially,

including the attempt provisions:

> The attempt provisions of § 1324(a) have extraterritorial application not
> because they are attempt crimes, but rather because offenders will often
> be outside the United States when they attempt to commit the crime.
> This feature of § 1324(a) does not result not from the fact that it
> punishes attempts. It results from the fact that the crime involves
> transporting aliens into the United States.

374 F.3d at 1347.

A lone a dissenter cited Yenkichi Ito, noting that Congress had done nothing

to express dissatisfaction or correct that understanding of § 1324 in subsequent

amendments.  Id. at 1359-60 (Rogers, J., dissenting).  But the Court rejected the

dissent, noting that the Ninth Circuit's opinion failed to cite Bowman, and that

Congress' silence may have been the "result of its understanding that the plain textual

evidence it had supplied already made the extraterritorial application of the statute

clear under the reasoning of Bowman."  Id. at 1349-50.  The Court also pointed to

First and Ninth Circuit cases which held the closely related inducement section of the

statute capable of extraterritorial application.  Id.  (citations omitted).  And there is

the more recent Ninth Circuit example of U.S. v. Lopez, 484 F.3d 1186, 1194-95 (9th Cir. 2007) (citing Villanueva, 408 F.3d at 198) ("In construing the 'brings to' offense, we observe initially that '[t]he language of the statute itself indicates that Congress intended it to apply to extraterritorial conduct. . . . That is, the 'brings to' language of § 1324(a)(2) clearly connotes the act of bringing the alien 'from outside' the country").

ROLLE's charge and conviction for Bringing Aliens to the United States for Commercial and Private Financial Gain, 8 U.S.C. § 1324(a)(2)(B)(ii) (Counts 18-33) includes not only the actual bringing of aliens to the U.S., but also the attempt to do so ("brings to or attempts to bring to the United States").  If ROLLE were charged only with a "bringing to" offense, there might be a genuine issue for review.  In U.S. v. Gottfried, 2012 WL 2887225 (S.D. Cal. Jul. 13, 2012) (unpublished), the district court cited Ninth Circuit precedent holding that a completed "bringing to" offense required a defendant's physical presence on dry land.  Id. at *2 (referring to Lopez, 484 F.3d at 1187, in determining what constitutes "bringing to" in 8 U.S.C. § 1324). The district court distinguished Villanueva, which upheld a conviction for an attempt, rather than for a completed brings to offense.  Id.  The Defendant in Gottfried was not charged with an attempt, nor was any jury instruction given or argument made concerning an attempt.  Id.  In the instant case, ROLLE was charged with an attempt,

and the jury was so instructed (Superseding Indictment, DE: 14-3 (Counts 18-33); (Transcript of Trial, Day Two, DE-105-159-160). See <u>Villanueva</u>, 408 F.3d at 198-99 stating that a failed attempt to "bring to" the U.S. will ordinarily be stopped outside of U.S. territory); <u>see also</u> <u>Delgado-Garcia</u>, 374 F.3d at 1347 (concluding, as did <u>Villanueva</u>, that attempts encompass much activity outside U.S. territory).

This Court does not appear to have squarely addressed whether § 1324 has extraterritorial application, and it may be a case of first impression in this Circuit.  It has cited <u>Villanueva</u> only once, in its opinion in ROLLE's 2012 appeal, but only after noting that by virtue of his unconditional guilty plea, ROLLE had waived all non-jurisdictional challenges, including the statute's extraterritorial reach.  Nevertheless, the district court does not appear to have abused its discretion in denying ROLLE's motion to dismiss the indictment

## II.    The district court appears to have committed no error in denying ROLLE's motion in limine to exclude Rule 404(b) evidence of his prior conviction for an alien ~~smuggling offense.~~

Prior to trial, the government served notice of its intent to use, under Rule 404(b), F.R.E., the facts and circumstances of ROLLE's prior conviction for an alien smuggling offense (Notice of Intent to Use Rule 404(b) Evidence, DE: 21).   At a hearing held on January 3, 2019, the district court stated that it was inclined to allow

27

the introduction of evidence of the prior conviction and the factual proffer filed in that case for the purposes of proving intent and knowledge, subject to the evidence adduced at trial and the position taken by ROLLE (Transcript of Status Conference, DE: 113-2-4).   At trial, the jury was instructed that must not consider any of this evidence to decide whether the defendant engaged in the activity alleged in the indictment," only for the "limited purpose of assisting you in determining whether the defendant had the state of mind, the knowledge, the intent necessary to commit the crime which is charged in this indictment" (Transcript of Trial, Day Two, DE-105-95).   The government then published evidence of ROLLE's 2010 conviction to the jury and the stipulated statement of facts from that case,(Transcript of Trial, Day 2; DE: 105-95-96).  The government then read the public record of the conviction and the statement of facts to the jury (id. at 96-99).

At approximately 11:00 p.m., on August 26, 2010, Customs and Border Protection Air Unit (C.P.) personnel detected a 20-foot Wellcraft with ROLLE and seven other persons on board outbound from the Bahamas, approximately 43 nautical miles from the coast of Palm Beach County (id. at 96).  ROLLE was operating the vessel, which was operating without running lights (id.).  Approximately an hour-and-a-half later, the boat was intercepted approximately 22 nautical miles from the Palm Beach County coast (id. at 96-97).   All of the passengers admitted they were

28

attempting to enter the U.S., and all admitted they had no documents from the U.S. allowing them to enter (id.).  After receiving Miranda warnings, ROLLE stated he was paid between $ 300-$ 500.00 each to transport the others (id. at 98).

This Court reviews the admission of Rule 404(b) evidence for abuse of discretion.  See U.S.  v. Ellisor, 522 F.3d 1255 (11th Cir.2008).  The Ellisor panel stated:

> Rule 404(b) provides that:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.... Fed.R.Evid. 404(b). The rule is "one of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity.  The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." United States v. Stephens, 365 F.3d 967, 975 (11th Cir.2004) (quoting United States v. Cohen, 888 F.2d 770, 776 (11th Cir.1989)) (internal quotation marks and footnotes omitted)

Id. at 1267   To be admissible under Rule 404(b), evidence of prior bad acts must withstand a three-part test:

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403

U.S. v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). Similarity between the prior bad act and the charged conduct will make the prior offense highly probative of the defendant's intent in the charged offense. See U.S. v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) The risk of undue prejudice can be reduced by an appropriate limiting instruction. Id.

First, evidence of ROLLE's prior alien smuggling conviction was clearly relevant to issues other than propensity alone. The evidence was relevant with respect to the issues of his state of mind and intent as to the conspiracy count and the substantive alien smuggling counts, as he pleaded not guilty and did not stipulate to possessing the requisite intent to commit the crime. See U.S. v. Perez, 443 F.3d 772, 779 (11th Cir. 2006) (internal citation omitted). See also U.S. v. Delgado, 56 F.3d 1357 (11th Cir. 1995), cert. denied, 516 U.S. 1049 (1996). ("When a defendant charged with conspiracy enters a plea of not guilty, as in this case, he makes intent a material issue in the case"). See also U.S. v. Matthews, 431 F.3d 1296, 1311 (11th Cir. 2005) (per curiam), cert. denied, 549 U.S. 811 (2006) ("Evidence of such extrinsic evidence as may be probative of a defendant's state of mind is admissible unless [the defendant] affirmatively takes the issue of intent out of the case.") (internal quotations omitted) (alteration in original). The government's need for the extrinsic evidence was more even evident considering ROLLE's Rule 29 claim that

there wasn't sufficient evidence showing that he had the intent to encourage and induce aliens to enter the United States or conspiracy (Transcript of Trial, Day 2; DE: 105-100).  The fact that the prior act involved a conviction fully satisfied the second prong of <u>Jernigan</u> as proof that the defendant committed the extrinsic act.  <u>See Delgado</u>, 56 F.3d at 1365.

Third, as for the risk that undue prejudice might outweigh the probative value of the extrinsic evidence, extrinsic evidence acts as a double-edged sword.  On one hand, a "similarity between the other act and a charged offense will make the other offense highly probative with regard to a defendant's intent in the charged offense." <u>Ramirez</u>, 426 F.3d at 1354.  There was a high degree of similarity between the instant offense and ROLLE's prior offense.  In both, he piloted a small vessel, overcrowded with aliens who had no prior authorization to enter the U.S., from a Bahamian island towards the U.S, as he undoubtedly learned after his arrest for the prior offense that the aliens were without authorization, the jury could infer not only his intent to commit the offense, but also that he either knew, or acted in reckless disregard of the possibility that his present passengers were also without authority.

However, "the more closely the extrinsic offense resembles the charged offense, the greater the prejudice to the defendant" because it increases "[t]he likelihood that the jury will convict the defendant because he is the kind of person

31

who commits this particular type of crime or because he was not punished for the extrinsic offense." U.S. v. Beechum, 582 F.2d 898, 915 n.20 (5th Cir. 1978) (*en banc*), cert. denied, 440 U.S. 920 (1979).  Ultimately, "limiting instructions as to the jury's permissible use of Rule 404(b) evidence can alleviate any undue prejudice caused by the admission of such evidence."  U.S. v. Edouard, 485 F.3d 1324, 1345 (11th Cir. 2007).   The district court gave the jury an appropriate instruction.

Finally, ROLLE's prior conviction for the same offense became final in 2012, some 6 years before the instant offense in 2018; the instant offense took place approximately three years after he was released from prison and deported following the earlier conviction, and some eight months after his  supervised release had ended (DE: 62-68, Govt. Exhibit 4-B, Excerpt of Transcript of Interview). Matthews, 431 F.3d at1311-12 (prior offense was eight years earlier); see also U.S. v. Lampley, 68 F.3d 1296, 1300 (11th Cir.1995) (prior offense was fifteen years earlier).  The district court does not appear to have abused its discretion in admitting the 404(b) evidence.

## III.    The district court does not appear to have erred in denying ROLLE's Rule 29 Motion

ROLLE moved for a Rule 29 judgment of acquittal, claiming that "there hasn't been sufficient evidence showing that he had the intent to encourage and induce aliens to enter the United States or conspiracy" (Transcript of Trial, Day Two, DE-105-99-

100). The district court disagreed, citing ROLLE's own statement, and denied the motion (id. at 100). This Court reviews the denial of a motion for judgment of acquittal de novo. U.S. v. Bowman, 302 F.3d 1228, 1237 (11th Cir.2002) (*per curiam*), cert. denied, 538 U.S. 1001 (2003). "We will not overturn a verdict 'if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt.'" U. S. v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir.2013).

The jury was instructed that in order to find ROLLE guilty of conspiracy to encourage or induce an alien to come to, enter, or reside in the United States knowing or acting in reckless disregard of the fact that such coming to, entry, or residence was or would be a violation of the 1aw, (Count 1), the government was required to prove, beyond a reasonable doubt:

> First, that the defendant and one or more persons in some way agreed to try to accomplish a shared and unlawful plan; second, that the defendant knew the unlawful purpose of the plan and willfully joined in that plan; and third, that the object of the conspiracy was to encourage or to induce an alien to come to, enter, or reside in the United States knowing or acting in reckless disregard of the fact that such coming to, entry, or residence was or would be a violation of the 1aw

(Transcript of Trial, Day Two, DE-105-156).

During his interview with law enforcement, ROLLE admitted that on Saturday,

33

October 20, 2018, he was approached by Jacob Curry, who he knew in the Abacos (Govt. Exhibit 4-B, Excerpts of Transcript of Interview, DE: 62-1-26-27,). Curry "referred" ROLLE to someone named, "Chuckie," who apparently instructed ROLLE to take the people by boat from Bimini to another individual named "Steve" somewhere just outside the U.S. border (id. at 28-33). ROLLE threw a GPS device and his phone overboard just before he saw a plane and boats; ROLLE gave the agents the Bahamian phone number he was supposed to call (id. at 33-36). ROLLE stated he was given money to turn over to "Steve" with the people, but he did not count it (id. at 39-41). ROLLE assumed the people on the boat were going to the U.S., but didn't know for certain (id. at 42). ROLLE admitted that he had previously been arrested for smuggling, and that he knew what was going on; it was common sense (id. at 43-44). ROLLE admitted that he picked the people up in Bimini and took them by boat into international waters; he was beyond the U.S. 12-mile limit when he saw U.S. boats in the distance and a plane overhead (id. at 46-49). ROLLE kept going, waiting for the boat he was supposed to meet to show up, and after doing circles for a minute, turned around and headed back towards Bimini, throwing his phone overboard when he saw boats coming after him (id. at 50-51).

ROLLE agreed with Agent Quattrocchi's summary of what had happened: Jacob Curry recruited ROLLE to take what was supposed to be six or seven people

34

to "Steve," somewhere just outside U.S. waters; ROLLE would give Steve the money Chuckie had given him for the people to get on Steve's boat; Steve would then pay ROLLE a portion of the money, "maybe 2- 3,000," and that he believed that Steve would take the people to the U.S., because doing that was where the big money and big risk was, in crossing the U.S. border (id. at 59-66).

ROLLE stated that he did not know if the passengers he was transporting were illegal; he assumed some of them were (id. at 66). He did not check their passports or visas, nor did he contact Bahamian authorities when he left Bimini or U.S. officials when he was approaching the U.S., because he had been deported in 2015 after being arrested for alien smuggling in 2010, and he had ended his supervised release on that charge in February of 2018 (id. at 66-69). Based on the statements made by ROLLE during the interview, coupled with his knowledge of the illegal status of the aliens from his prior conviction and the testimony of his co-defendants, a reasonable jury could find that ROLLE had agreed with others, and was a willing and knowing participant, in a plan to induce illegal aliens to come to, enter, or reside in the U.S. in exchange for money, when ROLLE knew, or acted in reckless disregard of the fact that it would be illegal for them to do so. See Perez, 443 F.3d at 782 (finding that the district court was correct in concluding defendant acted in reckless disregard of the aliens' status; "upon his conviction and upon his plea in a very similar case, he was

35

put on notice that it's not enough simply to take somebody aboard and bring them over here, and the failure to do more, the failure to inquire further").

As for the substantive offenses of encouraging and inducing aliens to come to, enter, or reside in the U.S., knowing or in reckless disregard of the fact that it would be illegal for them to do so (Counts 2-17), the jury was instructed that the government had to prove, beyond a reasonable doubt:

> First, that the defendant knowingly encouraged or induced a person to come to, to enter, or to reside in the United States in violation of the law; second, that such person was then an alien; third, that the alien's coming to, entry in, or residence in the United States was or would have been illegal; and fourth, that the defendant either knew or acted in reckless disregard of the fact that the aliens coming to, entry, or residence in the United States was or would have been in violation of the law. An alien is any person who is not a natural born or naturalized citizen or a national of the United States. The term national of the United States includes not only a citizen but also a person who, though not a citizen of the United States, owes permanent allegiance to the United States.
>
> To encourage means to instigate, to incite through action, to give courage to, to inspirit, to embolden, to raise confidence in, **to help**, to forward, and/or to advise.
>
> To induce means to bring about -- to bring on or about, to effect, to cause, to influence an act or course of conduct, lead by persuasion or reasoning, incite by motives, and/or to prevail upon.
>
> To act with reckless disregard means to be aware of but consciously and carelessly ignore facts and circumstances clearly indicating that the persons coming to or entering the United States would be a violation of the law

(emphasis supplied).

36

Based upon the evidence previously noted above, a reasonable jury could find the last three elements satisfied.  The question is whether ROLLE encouraged or induced them.  In U.S. v. Lopez, 590 F.3d 1238, 1246 (11th Cir. 2009), cert. denied, 562 U.S. 981 (2010), Lopez and two others were charged with conspiracy to encourage or induce 17 aliens to unlawfully enter the U.S.  Id. at 1242.  Lopez was seen driving the boat.  Id.  He objected to the government's jury instructions, which in part used dictionary definitions defining the term, "encourage," as "to help."  Id. at 1246.  The district court did not give the government's instructions, instead permitting each side to argue their positions on the common meanings of "encourage" and "induce" in closing arguments, without referring to specific dictionaries.  Id.

The jury, during deliberations, sent the court a note asking whether knowingly "encouraged" or "induced" required the Defendant to communicate with the persons being transported, either orally or by gesture.  Id.  The district court then gave the government's requested instruction over Lopez's objection:  To "encourage" means to knowingly instigate, to incite to action, to give courage to, to inspirit, to embolden, to raise confidence, **to help**, to forward, and/or to advise.  Id. (emphasis supplied).

Courts give undefined statutory terms their "ordinary meaning" or "common usage," often turning to dictionary definitions for guidance in ascertaining ordinary meaning.  Id.  U.S. v. Santos, 553 U.S. 507 (2008).  Thus, the district court did not

err in using dictionary definitions of "encourage," as "multiple dictionaries include 'to help' in the definition of 'encourage.'"  Id. at 1248-49 (citing U.S. v. He, 245 F.3d 954 (7th Cir.), cert. denied, 534 U.S. 966 (2001)  (affirming the district court's usage of a dictionary in defining the term "encourage" in § 1324(a)(1)(A)(iv) as "to knowingly instigate, help or advise").

Lopez argued that his conduct was not as extensive as the defendant in U.S. v. Hanna, 639 F.2d 192, 193 (5th Cir. Unit B 1980), (affirming a defendant boat captain's  conviction for encouraging or inducing the unlawful entry of 148 Haitian aliens). In Hanna, the government proved at trial that the defendant was captain of a vessel that picked up 148 Haitians from two ports in Haiti, that he was employed to take the boat to Miami, that he assisted aliens in boarding the boat, that during the voyage the defendant acquired provisions for the passengers, and that he constructed an alibi to give police upon his arrival with the aliens in the United States. Id.

The Court in Lopez compared Lopez's role with that of the captain in Hanna; that the trial evidence established that Lopez was more than a "mere passive boat driver." That evidence showed that:

> (1) Lopez and Carnet-Castro made a previous alien-smuggling trip from the Bahamas shortly before the incidents in this case, for which Lopez earned $20,000; (2) Lopez and Carnet-Castro were to split the proceeds of this trip, and Lopez knew why they were going to the Bahamas; (3) Lopez lied to USCG officers when he was initially stopped, concocted

38

a story about being out on a fishing trip, lied about whether the aliens had residency documentation, and pretended the only aliens on board were those up on deck; and (4) Lopez participated in picking up the aliens from an abandoned hotel, and he acquiesced in accepting money from an unidentified man in the Bahamas for doing so. Contrary to Lopez's characterization, this is not a case where he merely drove a boat full of aliens from the Bahamas to the United States. Rather, Lopez first had to take a boat to the Bahamas, refuel it, spend the night, pick up the aliens from an abandoned hotel, and then go to the marina and come back to the United States

Id. at 1252.

In the instant case, ROLLE agreed to take the aliens and rendezvous with "Steve" somewhere outside the U.S. 12-mile limit; he accepted money from "Chuckie" in the Bahamas to do so; some of which he was to give to "Steve," to continue the trip, and some he was to receive for his services  (Govt. Exhibit 4-B, Excerpts of Transcript of Interview, DE: 62-1-39-46).  Whether he was a "mere passive boat driver" is an open question.  Nonetheless, there is nothing in the Lopez opinion or in any other Eleventh Circuit opinion that clearly states or otherwise intimates that a "mere passive boat driver" does not provide sufficient help or encouragement to escape liability.  Additionally, not only did ROLLE fail to object to the use of the dictionary definition, his counsel used the term, "help," in defining the meaning of encourage in closing argument (id. at 138, 139).  His failure to object would subject a challenge of the district court's instructions to plain error review,

39

which he could not meet. The district court does not appear to have erred in using the dictionary definition of encourage, including the phrase, "to help," the jury could reasonably find the government had satisfied its burden, and the court does not appear to have erred in denying ROLLE's Rule 29 motion on these counts.

Finally, as to Counts 18-33, bringing an alien into [sic] the United States for the purpose of commercial advantage or private financial gain, the jury was instructed that the government had to prove:

> First, that the defendant knowingly brought or attempted to bring a person to the United States; second, that that person was an alien; third, that that alien did not have prior official authorization to come to, enter, or reside in the United States; fourth, that the defendant either knew or acted in reckless disregard of the fact that the alien did not have prior official authorization to come to, to enter, or to reside in the United States; and fifth, that the defendant brought or attempted to bring the alien to the United States for the purpose of commercial advantage or private financial gain

(Transcript of Trial, Day 2; DE: 105-158-160). The jury was also instructed that as the offense included attempts,

> The defendant can be found guilty of an attempt to conduct that offense only if both of the following facts are proved beyond a reasonable doubt: First, that the defendant knowingly intended to commit the offense of bringing an alien into [sic] the United States for the purpose of commercial advantage or private financial gain when the defendant knew or acted in reckless disregard of the fact that such alien lacked prior official authorization as charged in the indictment; and second, the defendant's intent was strongly corroborated by his taking a substantial

step toward committing the crime

(id. at 160). As discussed previously, the evidence was sufficient for the jury

to find that the first three elements were satisfied; the fact that the passengers

were aliens, that ROLLE either knew or acted in reckless disregard of the fact

that the aliens had no prior authorization to come to, enter or reside in the U.S.,

and that ROLLE acted for the purpose of commercial financial gain. Whether

he possessed the intent to bring the aliens to the U.S. or attempt to do so is a

slightly different matter.

While ROLLE did not testify at trial, excerpts of his post-arrest

interview with law enforcement was played for the jury and transcribed for

them to follow the audio. He told his questioners that he never intended to

cross the 12-mile territorial limit. Nevertheless, attempts at alien smuggling

offenses can fail outside the limit or inside. See Villanueva, 408 F.3d at 198-

99 ("While some failed attempts will include activity within the United States,

many, if not most, will take place extraterritorially") It was for the jury to

believe or disbelieve his statements. It is well established that "[c]redibility

determinations are the exclusive province of the jury." U.S. v. Parrado, 911

F.2d 1567, 1571 (11th Cir. 1990), cert. denied, 498 U.S. 1104 (1991). If the

jury believed that he never intended to cross the 12-mile limit, the jury could

have reasonably found that he lacked the intent to commit the offense. However, they weren't required to believe him, and it was just as reasonable for the jury to find that he possessed the requisite intent.

On the other hand, if the jury believed that he possessed intent to commit the offense, as they apparently found, it could also reasonably find that that intent was strongly corroborated by his taking a substantial step toward committing the crime, his piloting of the boat to within approximately 19 miles of the U.S. 12-mile territorial limit. Thus, it appears that the district court did not err in denying ROLLE's Rule 29 motion.

**IV.    The district court does not appear to have committed error by refusing to instruct the jury that proof of an overt act was required to convict ROLLE of conspiracy.**

ROLLE was charged and convicted of Count I, Conspiracy to Encourage and Induce Aliens to Enter the United States, a violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Superseding Indictment, DE: 14-1). ROLLE objected to the district court's refusal to give a jury instruction on the conspiracy count requiring proof of an overt act (Tr. of Trial, DE: 105-105). Challenges to a district court's jury instructions are reviewed *de novo*. U.S. v. Williams, 526 F.3d 1312, 1320-1321 (11th Cir. 2008). A conviction

will not be reversed "on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." Id. at 1320. "If the instructions accurately reflect the law, we give the trial court wide discretion in determining the style and wording of the instructions." Id. at 1321. The U.S. Supreme Court has established that if a criminal statute does not expressly require an overt act for conviction, then none is required. See U.S. v. Shabani, 513 U.S. 10, 14 (1994) (holding that proof of an overt act is not required to prove a conspiracy in violation of 21 U.S.C. § 846).

> [W]e find it instructive that the general conspiracy statute, 18 U.S.C. § 371, contains an explicit requirement that a conspirator "do any act to effect the object of the conspiracy." In light of this additional element in the general conspiracy statute, Congress' silence in § 846 speaks volumes. After all, the general conspiracy statute preceded and presumably provided the framework for the more specific drug conspiracy statute. " Nash and Singer give Congress a formulary: by choosing a text modeled on § 371, it gets an overt-act requirement; by choosing a text modeled on the Sherman Act, 15 U.S.C. § 1, it dispenses with such a requirement.

Id. (citing U.S. v. Sassi, 966 F.2d 283, 284 (7th Cir.), cert. denied, 506 U.S. 991 (1992) ).[3] See also U.S. v. Lanier, 920 F.2d 887, 892 n. 43 (11th Cir.), cert. denied, sub nom. Stevens v. U.S., 502 U.S. 872 (1991) ("In the absence of statutory language requiring proof of an overt act, government need not establish overt act") (citing

---

[3]Nash v. U.S., 229 U.S. 373 (1913); Singer v. U.S., 323 U.S. 338 (1945).

<u>Singer</u>, 323 U.S. at 340). Because ROLLE was not charged with conspiracy pursuant to 18 U.S.C. § 371, and because an overt act is not an element of, or even mentioned in § 1324(a), the government was not required to prove an overt act. Even if proof of an overt act were required, the district court's failure to so instruct would be harmless error, as there were several overt acts committed by ROLLE, not the least of which was the fact that he piloted the vessel. The district court does not appear to have committed error by refusing to instruct the jury that proof of an overt act was required.

## V.     ROLLE's total sentence of 60 months appears to be reasonable under the circumstances.

This Court reviews the reasonableness of a sentence imposed by the district court under a deferential abuse of discretion standard. <u>Gall v. U.S.</u>, 552 U.S. 38, 41 (2007). First, the Court reviews to "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." <u>Id.</u> at 51. If the Court finds the sentence procedurally

sound, "the second step is to review the sentence's 'substantive reasonableness' under the totality of the circumstances, including 'the extent of any variance from the Guidelines range.'" See U.S. v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009), cert. denied, 557 U.S. 927 (2009) (quoting Gall, 552 U.S. at 51).

Prior to sentencing, a PSR was prepared, in which ROLLE's base offense level was determined with respect to one count of Conspiracy to Encourage and Induce Aliens to Enter the United States, 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count I); 16 counts of Encouraging and Inducing Aliens to Enter the United States 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 2-17); and 16 counts of Bringing Aliens to the United States for Commercial and Private Financial Gain, 8 U.S.C. § 1324 (a)(2)(B)(ii) (Counts 18-33). All of these offenses are found in the United States Sentencing Manual (USSG) (Nov. 2018) in § 2L1.1 (PSR, DE: 71 at 7). Because all of the offenses are immigration offenses, and all involve substantially the same harm, they are grouped together under USSG § 3D1.1- § 3D1.4 (id.). Under USSG § 2L1.1, the base offense level is 12 (id.). Three levels were added because the offense involved between 6 and 24 aliens (§ 2L1.1(b)(2)(A); two levels were added after a previous conviction for alien smuggling (§ 2L1.1(b)(3)(A); and two levels were added for Role in the Offense because ROLLE used a special skill, in a manner that significantly facilitated the commission or concealment of the offense (§ 3B1.3) (id.).

The total offense level was 19 (id. at 8).  The Probation Office reported that ROLLE had 3 criminal history points for his previous conviction for alien smuggling (id. at 8-9).  ROLLE's total offense level of 19 and three criminal history points placed him in Criminal History Category II, with a resulting advisory Guidelines sentencing range of 33-41 months (id. at 14; USSG Chapter 5, Part A, Sentencing Table).  However, the Probation Office reported that because "the statutorily minimum sentences are greater than the minimum of the applicable guidelines range . . . the guideline term of imprisonment is 60 months, § 5G1.2(b)" (id.).  Counts 18 and 19 were deemed to be ROLLE's first and second violations of 8 U.S.C. § 1324(a)(2)(B)(ii), and pursuant to  8 U.S.C. § 1324(a)(2)(B)(iii), Counts 20-33 were each counted as "any other violation," for which a minimum of 5 years and a maximum of 10 years was required.  See U.S. v. Ortega-Torres, 174 F.3d 1199, 1201 (11th Cir.), cert. denied, 528 U.S. 911 (1999) ("The use of the terms "each alien" and "violation" together in the introductory sentence of § 1324(a)(2) make clear that courts should count each alien as a separate violation for sentencing purposes").  The Probation Office appears to have correctly calculated the advisory guidelines range.  Neither party filed objections to the PSR (Addendum to the Presentence Report., DE: 71-1).

Sentencing took place on March 26, 2019 (Tr. of Sentencing, DE: 102).  The

46

district court implicitly adopted the advisory guidelines range as calculated by the Probation Office, with its range of 33-41 months absent a minium mandatory, and 60 months as a result of the min-man, and counsel for both parties confirmed the accuracy of the calculations (id. at 3). The court heard both parties on the sentence they deemed appropriate (id.). The government argued for a seven-year, above-guidelines sentence, based on the fact that ROLLE had received 60 months for his prior conviction of alien smuggling, and it had not deterred him from committing the same crime again (id. at 3-5). Defense counsel argued for the guidelines sentence of 60 months (id. at 5-7). The Court expressed its concern that ROLLE had not learned from his prior conviction and noted his lack of remorse (id. at 5-6), but also expressed its reluctance to sentence ROLLE to an above-guidelines sentence and force the government to "spend all that money on him for another 24 months" (id. at 7-8). ROLLE chose not to allocute (id. at 8). The Court then noted that it had considered the guidelines and the factors set forth in 18 U.S.C. § 3553(a), and sentenced ROLLE to 60 months imprisonment on Counts 1-33, ro run concurrently; a term of supervised release of 3 years, again to run concurrently; and a special assessment of $ 100.00 on each count, for a total of $ 3,300.00 (id. at 8-10). No fine was imposed (id. at 8-9). ROLLE did not object to the district court's findings of fact or to the manner in which sentence was imposed (id. at 10).

47

The district court does not appear to have committed any significant procedural error.  It reiterated the calculation of the total offense level contained in  the PSR and its correct statement of the advisory Guidelines range, stated its belief that a mandatory-minimum sentence applied and received agreement from counsel, stated that it had considered the § 3553(a) factors, gave the parties an opportunity to argue for a particular range and sentence, and sufficiently explained the sentence chosen by reference to the statutory minimum required.

As for substantive reasonableness, ROLLE's 60-month sentence could have been much greater.  "Although we do not automatically presume [that] a sentence within the [Guidelines range is reasonable, we 'ordinarily ... expect a sentence within the Guidelines range to be reasonable.' " U.S. v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008) (quoting U.S. v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam)). ROLLE's sentence was exactly the  Guidelines range of 60 months.   Because the sentence was within the properly calculated Guidelines range, it is presumptively reasonable.  See U.S. v. Johnson, 485 F.3d 1264, 1272 (11th Cir. 2007). The district court sentenced ROLLE to the  lowest possible sentence permitted by law, and appears to have committed no error in doing so.

## CONCLUSION

Pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), counsel has made a conscientious review of the record in this case; represents in good faith that the record contains no appealable issue of merit; and respectfully requests that this Court make an independent review of the record. <u>See</u> <u>United States v. Gholston</u>, 932 F.2d 904 (11th Cir. 1991).

by: /s/ Neal Gary Rosensweig

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)(7)(B)

This brief complies with the type-volume limitation contained in Rule 32(a)(7)(B), Federal Rules of Appellate Procedure, in that it contains 12,092 words.

by: /s/ Neal Gary Rosensweig

49

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was filed via the CM/ECF system and served via CM/ECF on Emily Smachetti, Assistant United States Attorney, Chief of Appellate Division, 99 NE 4th Street, Miami, Florida, 33132-2111, and that one true and correct copy of the foregoing has been sent by mail to: Stanley Wintfield Rolle, USM # 73834-004, USP Coleman Medium, P.O. Box 1032, Coleman, Florida 33521 this 3rd day of March, 2021.

Respectfully submitted,

NEAL GARY ROSENSWEIG, P.A.
Attorney for Appellant
P.O. Box 814598
Hollywood, Florida 33081-4598
954-962-7720


by: /s/ Neal Gary Rosensweig

NEAL GARY ROSENSWEIG, ESQ.
Florida Bar No. 0100773